# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## RICKS v STATE OF MICHIGAN

Docket No. 160657. Argued on application for leave to appeal March 4, 2021. Decided July 8, 2021.

Desmond Ricks filed a complaint in the Court of Claims under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq*., seeking compensation for the nearly 25 years that he spent in prison following a wrongful conviction. Ricks was sentenced in 1987 for armed robbery and assault with intent to rob while armed, and in 1991, he was paroled with 4 years and 118 days remaining on his sentences. While on parole in 1992, Ricks witnessed the shooting death of Gerry Bennett. While Ricks was fleeing from the gunman, he dropped his coat, which the police later used to connect him to Bennett's killing along with fabricated ballistics evidence. On October 12, 1992, Ricks was sentenced to 30 to 60 years in prison for second-degree murder and two years for felony-firearm. As a result of these convictions, Ricks's parole for armed robbery and assault was violated and revoked. Under Michigan law, Ricks was required to serve the remainder of his sentences for armed robbery and assault before his new sentences would begin to run; he served these sentences from October 13, 1992 to February 8, 1997. After serving these sentences, Ricks began to serve his sentences for the murder of Bennett, for which he was imprisoned until May 26, 2017. Following the discovery that the police had fabricated the ballistics evidence used to convict Ricks, the Wayne Circuit Court, Richard M. Skutt, J., vacated Ricks's convictions for murder and felony-firearm, and Ricks was released from prison. Ricks filed a WICA complaint seeking $1,231,918 for the time he spent in prison from October 13, 1992 to May 26, 2017. The state agreed that Ricks had been wrongfully imprisoned for Bennett's murder and was eligible for compensation under the WICA. However, the state asserted that Ricks was not entitled to compensation for the 4 years and 118 days he had served for his armed-robbery and assault sentences after his parole was revoked. Ricks argued that he was entitled to compensation for this time because the wrongful conviction was the only reason that his parole was revoked. The Court of Claims, MICHAEL J. TALBOT, J., concluded that Ricks was not entitled to compensation under the WICA for the time he served for the remainder of his armed-robbery and assault sentences and entered a stipulated judgment in Ricks's favor for $1,014,657.53. Ricks reserved the right to appeal the remainder of his claim. The Court of Appeals, CAMERON and TUKEL, JJ. (JANSEN, P.J., dissenting), affirmed the Court of Claims. 330 Mich App 277 (2019). The Supreme Court ordered and heard oral argument on whether the Court of Appeals erred by concluding that MCL 691.1755(4) barred Ricks from recovering compensation for the time he served for the parole revocation. 505 Mich 1068 (2020).

In an opinion by Chief Justice MᶜCᴏʀᴍᴀᴄᴋ, joined by Justices Bᴇʀɴsᴛᴇɪɴ, Cᴀᴠᴀɴᴀɢʜ, and Wᴇʟᴄʜ, the Supreme Court, in lieu of granting leave to appeal, *held*:

The exception in MCL 691.1755(4), which bars compensation under the WICA for any time served under a consecutive sentence for another conviction, is not applicable when a wrongful conviction triggered a parole revocation which required the WICA claimant's parole-revoked sentence to be served before the sentence for the wrongful conviction would begin to run, because the time served under the parole-revoked sentence is not served under a consecutive sentence for another conviction.

1. The WICA allows a person who was wrongfully convicted and imprisoned to seek compensation by bringing an action against the state. The WICA has two steps: (1) determining who is eligible for compensation and (2) calculating the amount of compensation to be awarded. Once a WICA claimant has satisfied the threshold-eligibility requirements of MCL 691.1755(1), the court must determine whether any time served is subject to the exception in MCL 691.1755(4) and calculate the amount owed for each year from the date the claimant was imprisoned until the date the claimant was released from prison. Under MCL 691.1755(4), compensation may not be awarded for any time during which the claimant was imprisoned under a concurrent or consecutive sentence for another conviction.

2. Just because a WICA claimant served sentences consecutively does not mean that the WICA's consecutive-sentence exception applies. Under MCL 768.7a(2), Ricks was required to serve the remaining portion of his sentences for armed robbery and assault before serving the sentences he received for second-degree murder and felony-firearm. The text of MCL 691.1755(4) makes the order in which the sentences were served critical. It provides that a WICA claimant cannot be compensated for time served in prison "under a . . . consecutive sentence for another conviction." A sentence that is served *before* another sentence begins to run is not a consecutive sentence, because it is not consecutive to anything. Under MCL 691.1755(4), compensation is barred only for time served under a sentence that begins to run *after* the completion of the sentence that gave rise to the claimant's WICA eligibility. Ricks served the remainder of his sentences for his 1987 convictions before serving his sentences for murder and felony-firearm. Therefore, the exception in MCL 691.1755(4) did not apply to bar compensation for time Ricks served after his wrongful conviction because he did not serve a consecutive sentence for another conviction.

3. The context and purpose of the WICA further support the conclusion that the Legislature intended to compensate eligible claimants who served a parole-revoked sentence only as a result of the wrongful conviction, and as required by law, served the parole-revoked sentence before the wrongful-conviction sentence. For example, the WICA's formula for compensation is straightforward: $50,000 per year of wrongful imprisonment from the date that the claimant was wrongfully imprisoned until the date of release. Only the exception in MCL 691.1755(4) ties compensation to the sentence imposed for the wrongful conviction. This exception also bars compensation for any time served under a concurrent sentence for another conviction. The Legislature presumably saw little utility in using the limited monies that fund the WICA to compensate a wrongfully convicted individual if they would have been imprisoned anyway under a concurrent sentence that was independent of the wrongful conviction. Similarly, the exception

in MCL 691.1755(1)(b) bars compensation when there is an adequate and independent basis for the claimant's incarceration. By contrast, when a wrongfully convicted person whose prior parole is violated because of a wrongful conviction is imprisoned, all of their imprisonment is wrongful. This result reflects the WICA's remedial purpose. All of Ricks's imprisonment was wrongful because all of it was caused by his wrongful convictions; WICA compensation helps to remedy that harm. Because the text, context, and purpose of the WICA agree that the Legislature intended to provide compensation for time served under a parole-revoked sentence when the revocation was caused solely by a wrongful conviction, Ricks was entitled to WICA compensation for the entire period that he was incarcerated between October 13, 1992 and February 8, 1997.

4. The Court of Appeals majority alternately held that even if Ricks's claim for compensation was not barred by MCL 691.1755(4), he still would not be entitled to additional compensation because his 1987 convictions were never reversed or vacated, and therefore, he did not meet the threshold-eligibility requirements of MCL 691.1755(1). The Court of Appeals majority erred by conflating the WICA's eligibility requirements with its compensation calculation. Nothing in the compensation formula required Ricks to meet the threshold-eligibility requirements for his 1987 convictions to be compensated for the time he served on those sentences as a result of his wrongful convictions. Rather, MCL 691.1755(2)(a) simply directs the court to calculate an eligible claimant's compensation based on the time served between the date of imprisonment and the date of release, so long as the exception in MCL 691.1755(4) does not apply to any of that time served. Because neither MCL 691.1755(2) nor (4) contains any language suggesting that a claimant who meets the wrongful-conviction threshold-eligibility requirements of MCL 691.1755(1) must satisfy those requirements again for each sentence that contributes to their wrongful imprisonment, the Court of Appeals erred when it read that requirement into the WICA.

Reversed and remanded.

Justice ZAHRA, joined by Justices VIVIANO and CLEMENT, dissenting, disagreed that Ricks was entitled to compensation for the time that he was imprisoned pursuant to his 1987 convictions under the clear, unambiguous language of the WICA. Justice ZAHRA noted that, in enacting the WICA, the Legislature had waived sovereign immunity as a matter of public policy in order to provide a path to limited compensation for a defined class of wrongfully imprisoned people. Under the WICA, these persons are entitled to compensation for the crimes they did not commit that form the basis of their WICA claims. Thus, the WICA ties a claimant's eligibility for compensation to the specific crimes, charges, and convictions that led to their wrongful imprisonment and that form the basis of the WICA claim. Justice ZAHRA disagreed with the majority that the question of eligibility was separate from the calculation of the amount due. He asserted that this analysis severed the necessary tie between the crimes, charges, and convictions that led to the wrongful imprisonment and the compensation owed. Additionally, contrary to the majority's assertion, MCL 691.1755(2) and (4) contained language limiting compensation by requiring the court to find that the claimant was wrongfully convicted and imprisoned before calculating the amount of compensation due, i.e., both the conviction and imprisonment referred to in MCL 691.1755(2) must be wrongful in order for a claimant to be eligible for compensation. Because Ricks did not satisfy the threshold requirements of MCL 691.1755(1) with respect to his 1987 convictions, he was not entitled to compensation for the time he served under those convictions. Further, contrary

to the majority's assertions, the specific order in which sentences are served is not what defines a sentence as consecutive; rather, it is the cumulative nature of the time served. The majority's reliance on the Legislature's use of the indefinite article "a" before "consecutive sentence" in MCL 691.1755(4) did not change the result that the statute precludes compensation for time served under a concurrent or consecutive sentence that is not the subject of the WICA claim. Finally, Justice ZAHRA disputed that there was anything wrongful about the time Ricks served under his valid 1987 convictions. The Legislature did not condition the applicability of MCL 691.1755(4) on the cause of the concurrent or consecutive sentence for another conviction. Under the WICA, Ricks was entitled to compensation for the time served only for his wrongful 1992 convictions.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED July 8, 2021

STATE OF MICHIGAN

SUPREME COURT

DESMOND RICKS,

Plaintiff-Appellant,

v

No. 160657

STATE OF MICHIGAN,

Defendant-Appellee.

BEFORE THE ENTIRE BENCH

MCCORMACK, C.J.

A wrongful conviction is a harm that can never be fully redressed. When an innocent person is imprisoned for a crime they didn't commit, we can't rewind the clock to make them whole again. They can't get back the time lost raising their children, forging a career, or contributing to their communities. But our Legislature has tried to compensate for these injuries, as best as the government can, by enacting the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq*. The WICA awards $50,000 for each

year someone spends wrongfully imprisoned, subject to a few exceptions set forth in the act. This case is about one of those exceptions: MCL 691.1755(4), which bars compensation for any time served under a consecutive sentence for another conviction.

The question is whether this exception applies when a wrongful conviction alone triggered a parole revocation, which required the WICA claimant's parole-revoked sentence to be served before the sentence for the wrongful conviction would begin to run. We hold that it does not, because the time served under the parole-revoked sentence is not served under a consecutive sentence for another conviction. We reverse the decision of the Court of Appeals and remand this case to the Court of Claims for further proceedings.

## I. FACTS AND PROCEEDINGS

In 1992, plaintiff Desmond Ricks saw a man shoot and kill Gerry Bennett in Detroit. Ricks was on parole then; he began serving concurrent sentences for armed robbery and assault with intent to rob while armed in 1987 and was paroled on May 30, 1991. When he witnessed Bennett's murder, Ricks still had 4 years and 118 days remaining on his armed-robbery and assault sentences.

As he fled from the gunman, Ricks dropped his winter coat. It would later be discovered by the police, who used it to connect him to Bennett's killing. Inside the coat was a phone book, a hospital visitor pass, and a picture of Ricks's baby daughter. Ricks was convicted of Bennett's murder, based in large part on ballistics evidence fabricated by a Detroit police officer. On October 12, 1992, he was sentenced to 30 to 60 years in prison for second-degree murder and two years for carrying a firearm during the commission of a felony (felony-firearm). Because Ricks was convicted of these new felonies, his parole for

2

armed robbery and assault was violated and revoked. Michigan law required Ricks to serve the rest of those sentences before his new sentences could begin to run. Ricks's judgment of sentence for the wrongful murder conviction reflected this:

> ORDER: Pursuant to [MCL] 768.7a(2), the term of imprisonment imposed in th[is] case shall begin to run at the expiration of the remaining portion of the[] term of imprisonme[nt] imposed in case no. 86-4314 (Recorder's Court).

As a result, Ricks served the rest of his armed-robbery and assault sentences from October 13, 1992 to February 8, 1997: 4 years and 118 days. After those sentences were completed, Ricks began to serve his sentences for the murder of Gerry Bennett. He would remain incarcerated for the next 7,412 days for a crime he didn't commit.

After the Michigan Innocence Clinic discovered that a Detroit Police Department officer had fabricated the ballistics evidence used to convict Ricks, the Wayne Circuit Court issued an order vacating his murder and felony-firearm convictions and sentences. Ricks was released from prison the same day, and the charges were dismissed.

Ricks filed a WICA complaint in the Court of Claims seeking compensation for the almost 25 years he was wrongfully imprisoned from October 13, 1992 to May 26, 2017. The state agreed that he had been wrongfully imprisoned and met the WICA's eligibility requirements for the time he wrongfully served for Bennett's murder. But it maintained that Ricks wasn't entitled to compensation for the 4 years and 118 days he served for his armed-robbery and assault sentences because his parole was revoked. The state's view was that MCL 691.1755(4), which provides that WICA "[c]ompensation may not be awarded . . . for any time during which the plaintiff was imprisoned under a concurrent or consecutive sentence for another conviction," prohibited compensation for this time.

3

Ricks believed that he was entitled to compensation for the years that were allocated to his prior sentences because his wrongful convictions were the only reason his parole was violated and revoked. He included in his complaint an affidavit from Cynthia Partridge, the time computation manager for the Michigan Department of Corrections, who confirmed that Ricks's parole was violated only because he was convicted of murder.

The Court of Claims agreed with the state, holding that the time Ricks served under the armed-robbery and assault sentences should not be included in the WICA compensation calculation. A stipulated judgment was entered in Ricks's favor for $1,014,657.53, while he reserved the right to appeal the remainder of his claim. The Court of Appeals affirmed the Court of Claims in a split decision. *Ricks v Michigan*, 330 Mich App 277; 948 NW2d 83 (2019). This appeal followed.

## II. THE WICA'S COMPENSATION SCHEME

### A. THE TWO-STEP INQUIRY

The WICA was enacted "to provide compensation and other relief for individuals wrongfully imprisoned for crimes; to prescribe the powers and duties of certain state and local governmental officers and agencies; and to provide remedies." 2016 PA 343, title. It waives sovereign immunity and allows a person who was wrongfully convicted and imprisoned to seek compensation by bringing an action against the state in the Court of Claims. MCL 691.1753.

The WICA has two steps. The first determines whether a claimant is eligible for compensation. See MCL 691.1755(1). The second calculates the precise amount of compensation that must be awarded to eligible claimants. See MCL 691.1755(2).

4

Step one: The WICA defines who is eligible for compensation at MCL 691.1755(1). A successful WICA claimant must have been convicted of at least one crime under Michigan law, must have been sentenced to a term of imprisonment in a state correctional facility, and must have served at least part of the sentence for that crime. MCL 691.1755(1)(a). The claimant's conviction must have been reversed or vacated, and the claimant must prove that their charges were subsequently dismissed or that they were acquitted upon retrial. MCL 691.1755(1)(b). Finally, the claimant must prove by clear and convincing evidence that the reason they can satisfy the requirements set forth in Subdivision (b) is because new evidence shows that they "did not perpetrate the crime and [were] not an accomplice or accessory to the acts that were the basis of the conviction . . . ." MCL 691.1755(1)(c). If the claimant satisfies all of these requirements, they are "entitled to judgment" in their favor. MCL 691.1755(1).

Step two: Subject to two exceptions, once a court finds that a plaintiff was wrongfully convicted and imprisoned, it "shall award compensation" according to the provisions set forth in MCL 691.1755(2). The court must award $50,000 "for each year from the date the plaintiff was imprisoned until the date the plaintiff was released from prison . . . ." MCL 691.1755(2)(a).

## B. THE EXCEPTIONS

The WICA carves out two relevant exceptions: one in the eligibility step and one in the compensation step. First, MCL 691.1755(1)(b) provides that a WICA claimant is not entitled to compensation—even if their conviction was set aside and they were not convicted of that offense again—if they were "convicted of another criminal offense

arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial."

Second, the compensation formula set forth at MCL 691.1755(2) explicitly conditions a WICA recipient's award on MCL 691.1755(4), which states that "[c]ompensation may not be awarded under subsection (2) for any time during which the plaintiff was imprisoned under a concurrent or consecutive sentence for another conviction." This is the exception relevant here.

### III.  ANALYSIS

We review de novo the WICA's compensation provisions. *Sanford v Michigan*, 506 Mich 10, 14; 954 NW2d 82 (2020). The precise question before us is whether the time Ricks served on the remainder of his parole-revoked sentences falls within MCL 691.1755(4)'s bar on compensation "for any time during which the plaintiff was imprisoned under a concurrent or consecutive sentence for another conviction." The primary goal of statutory interpretation is to give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State (On Remand)*, 489 Mich 194, 217; 801 NW2d 35 (2011). To do that, we read a statute's provisions "reasonably and in context." *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).

The text of MCL 691.1755(4), the context in which it is set, and the WICA's purpose all lead to the same conclusion: the Legislature intended to compensate claimants like Ricks for time served on a parole-revoked sentence when it is directly attributable to their wrongful conviction.

6

## A. MCL 691.1755(4): THE TEXT

Starting with the text. A statute's language "offers the most reliable evidence of the Legislature's intent." *Badeen v PAR, Inc*, 496 Mich 75, 81; 853 NW2d 303 (2014). Here, that text is "Compensation may not be awarded under subsection (2) for any time during which the plaintiff was imprisoned under *a* concurrent or *consecutive sentence for another conviction*." MCL 691.1755(4) (emphasis added).

After the murder conviction, Ricks served two separate sets of sentences: as required by Michigan law, he first served the parole-revoked sentences for his armed-robbery and assault convictions and he then served his sentences for murder and felony-firearm. MCL 768.7a(2) leaves no room for discretion: when a person on parole is convicted of a new felony, they must first finish serving the rest of their parole-revoked sentence before they start serving their sentence for the new offense. Ricks's murder and felony-firearm sentences did not begin to run until he finished serving the 4 years and 118 days that remained for his armed-robbery and assault sentences. One set of these sentences was, indeed, served consecutively to the other.

"Consecutive sentences" are "those following in a train, succeeding one another in a regular order, with an uninterrupted course or succession, and having no interval or break." *People v Chambers*, 430 Mich 217, 220 n 2; 421 NW2d 903 (1988). But the WICA doesn't use the phrase "consecutive sentences." It refers to "*a* . . . consecutive sentence"—a singular noun. MCL 691.1755(4). When we interpret a statute, we strive to give effect to every phrase, clause, and word in it. *Rock v Crocker*, 499 Mich 247, 262; 884 NW2d 227 (2016). The Legislature's choice to cabin the exception to "a" consecutive sentence, rather than "consecutive sentence*s*," is important. A single sentence that is

7

properly characterized as "a consecutive sentence" is one that only begins to run after the completion of another sentence. 21A Am Jur 2d Criminal Law, § 808, § 812, pp 23-28. Ricks's murder and felony-firearm sentences were served after—that is, consecutively to—the completion of his parole-revoked sentences.

That a WICA claimant served a consecutive sentence doesn't mean that the WICA's consecutive-sentence exception must apply. The text of MCL 691.1755(4) makes the order the sentences are served critical. A WICA claimant can't be compensated for time they spent imprisoned "under a . . . consecutive sentence for another conviction." If the Legislature had not intended to provide compensation in cases like Ricks's, it could simply have written MCL 691.1775(4) to bar compensation "for any time during which the plaintiff was imprisoned under a sentence for another conviction." But it did not.

A sentence that is served *before* another begins to run is not a consecutive sentence. It is not consecutive to anything. And the exception in MCL 691.1755(4) applies only when the excluded-from-compensation consecutive sentence is served for "another conviction"—a conviction other than the one that established the claimant's eligibility for compensation. Therefore, MCL 691.1755(4)'s consecutive-sentence exception bars compensation only for time served under a sentence that begins to run *after* the completion of the sentence for the conviction giving rise to the claimant's WICA eligibility.

Hypotheticals help. Imagine a person wrongfully convicted of an offense for which they received a 10-year prison term. If they tried to escape prison while serving that sentence, they would be guilty of a felony under MCL 750.193(1) and would receive a new sentence of up to five years for that offense. Under that statute, the attempted-escape sentence would have to be served consecutively to the original (wrongful) sentence. See

8

*id*. ("The term of the further imprisonment shall be served after the termination, pursuant to law, of the sentence or sentences then being served."). If that person sought WICA compensation after completing both sentences, they would only be eligible for 10 years of compensation because MCL 691.1755(4) would bar compensation for the time served for the consecutive sentence for the attempted-escape conviction. That result follows the WICA's purpose, of course.

Or, if a person who is paroled for a wrongful conviction commits a new felony, MCL 768.7a(2) would require them to first serve the rest of their wrongful sentence before the sentence for their new (and valid) conviction began to run. The WICA would award compensation for the time served completing the wrongful-conviction sentence. But it would exclude compensation for any time served under the new sentence because that would be imprisonment under a consecutive sentence for another conviction. This too is harmonious with the WICA's purpose. There is nothing wrongful about the imprisonment for the new offense; it was not caused by a wrongful conviction.

Ricks served the remainder of his sentences for his 1987 convictions before he began to serve his sentences for murder and felony-firearm. The exception in MCL 691.1755(4) does not apply to bar compensation for any time Ricks served after his wrongful conviction because he did not serve "a . . . consecutive sentence for another conviction."

## B. MCL 691.1755(4): CONTEXT AND PURPOSE

The rest of the WICA's language is more evidence that the Legislature intended to compensate eligible claimants who serve a parole-revoked sentence only as a result of the

9

wrongful conviction and, as required, serve the parole-revoked sentence before the wrongful-conviction sentence. For example, after establishing the eligibility requirements, the statute provides a straightforward formula for compensation: it directs a court to award $50,000 "for each year from the date the plaintiff was imprisoned until the date the plaintiff was released from prison," subject to MCL 691.1755(4). MCL 691.1755(2)(a). MCL 691.1755(4)'s exception is the only compensation carve out—no other statutory text cabins compensation only to the sentence imposed for the wrongful conviction.

MCL 691.1755(4)'s exception also bars compensation for any time served under a concurrent sentence for another conviction. This text too tells us something about the Legislature's intent. The amount of compensation to award is a matter of legislative judgment; there are only so many dollars to fill the WICA bucket, after all, and the Legislature had to decide how best to allocate limited funding. It presumably saw little utility in compensating someone for a wrongful conviction if they would have been incarcerated anyway under a concurrent sentence that was independent of the wrongful conviction.

Similarly, the WICA's eligibility requirements bar compensation "if the plaintiff was convicted of another criminal offense arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial." MCL 691.1755(1)(b). In that situation, as with MCL 691.1755(4)'s exception, there is an adequate and independent basis for the claimant's incarceration. If a WICA claimant was convicted of multiple offenses arising from the same transaction and some—but not all— of the convictions were vacated or reversed, then their imprisonment was justified because any undisturbed conviction was an adequate and independent basis for their incarceration.

10

Or if a claimant was wrongfully convicted of a greater offense but was convicted of a lesser offense on retrial, their incarceration would not be wrongful because they were still guilty of an offense arising from the same transaction. These potential claimants would not be eligible for WICA compensation. But a wrongfully convicted person whose prior parole is violated because of that wrongful conviction stands in sharp contrast with these examples. All of their imprisonment is wrongful.

This result reflects the WICA's remedial purpose, too. The Legislature named the act the "Wrongful Imprisonment Compensation Act," not the "Wrongful *Conviction* Compensation Act." MCL 691.1751. And it was enacted "to provide compensation and other relief for individuals wrongfully imprisoned for crimes . . . ." 2016 PA 343, title. Compensating an exoneree for time spent incarcerated for a parole violation that resulted only from the wrongful conviction is harmonious with that purpose. (And the opposite is disharmonious.) All of Ricks's imprisonment was "wrongful" because it was all caused only by his wrongful convictions; WICA compensation helps to remedy that harm.

And WICA compensation is about more than money; it also represents the state's acknowledgment of the wrong done. As the Attorney General has explained, "the government's public recognition and overturning of the convictions of these men helps to foster a healing process, and assures Michiganders that the government—regardless of fault—will take ownership of its errors." Department of the Attorney General, *Michigan AG Nessel Approves $2,320,000 in Compensation Awards to Wrongfully Convicted Men* (May 17, 2019), available at <https://www.michigan.gov/ag/0,4534,7-359--497851--,00.html> [https://perma.cc/G3R4-A2BV]. See also Scott, *"It Never, Ever Ends": The Psychological Impact of Wrongful Conviction*, 5 Am U Crim L Brief 10, 13-16 (2010) (detailing the

11

psychological impact of wrongful imprisonment).  The state does not dispute that Ricks's parole-revoked sentence was caused only by his wrongful convictions; the government's errors caused all of Ricks's imprisonment.

The WICA's text, context, and purpose agree: the Legislature intended to provide compensation for time served under a parole-revoked sentence when the revocation was caused solely by a wrongful conviction.  For these reasons, we conclude that Ricks is entitled to WICA compensation for the entire period that he was incarcerated between October 13, 1992 and February 8, 1997.

## IV.  THE COURT OF APPEALS' ALTERNATE HOLDING

The Court of Appeals majority alternately held that even if MCL 691.1755(4) didn't bar Ricks's claim for compensation for the time he served on the rest of his parole-revoked sentences, he would still not be entitled to compensation for that time.  *Ricks*, 330 Mich App at 288.  After all, the majority explained, Ricks's 1987 convictions were never reversed or vacated.  *Id.* at 288-289.  Therefore, in the majority's view, Ricks should not be compensated for time served under the parole-revoked sentences because the Legislature did not intend to award compensation "unless the charges in a specific judgment of conviction were reversed or vacated and those charges were later dismissed or the plaintiff was found not guilty on retrial."  *Id.* at 289.  "Because Ricks cannot meet the threshold requirements of WICA with respect to the 1987 convictions," the majority concluded, "he was not entitled to compensation for the time he was incarcerated in relation to those convictions."  *Id.*

12

We reverse this alternate holding. The Court of Appeals majority erred by conflating the WICA's eligibility requirements with its compensation calculation. The state doesn't dispute that Ricks is eligible for compensation—the only disagreement is how to calculate his compensation. Nothing in the compensation formula requires Ricks to clear the threshold-eligibility requirements for his 1987 convictions to be compensated for the time he served on those sentences as a result of his wrongful convictions. And MCL 691.1755(2)(a) simply directs the court to calculate an eligible claimant's compensation based on the time served between "the date the plaintiff was imprisoned until the date the plaintiff was released from prison," so long as MCL 691.1755(4)'s exception does not apply to any of that time served.

Because neither MCL 691.1755(2) nor MCL 691.1755(4) contains any language suggesting that a claimant who meets the wrongful-conviction threshold-eligibility requirements of MCL 691.1755(1) must satisfy those requirements *again* for each sentence that contributed to their wrongful imprisonment, the Court of Appeals erred by reading that requirement into the WICA.

## V. CONCLUSION

Because Ricks did not serve a consecutive sentence for another conviction during his wrongful imprisonment from October 13, 1992 to May 26, 2017, MCL 691.1755(4)'s exception does not bar compensation for any of that time. We also hold that once a WICA claimant has satisfied the threshold-eligibility requirements of MCL 691.1755(1), the only remaining tasks are to determine whether any time served is subject to MCL 691.1755(4)'s exception and to calculate the amount owed "for each year from the date the plaintiff was

13

imprisoned until the date the plaintiff was released from prison . . . ."  MCL 691.1755(2)(a).

We therefore reverse the decision of the Court of Appeals and remand this case to the Court

of Claims for further proceedings.

Bridget M. McCormack
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch

STATE OF MICHIGAN

SUPREME COURT

DESMOND RICKS,

       Plaintiff-Appellant,

v                                                                No. 160657

STATE OF MICHIGAN,

       Defendant-Appellee.

_____

ZAHRA, J. (*dissenting*).

I dissent from the majority's decision reversing the judgment of the Court of Appeals. In 1987, plaintiff was convicted of armed robbery and assault with intent to rob while armed and was sentenced to 4 to 10 years' imprisonment for each conviction. In 1992, while on parole for the 1987 convictions, plaintiff was convicted of second-degree murder and possession of a firearm during the commission of a felony (felony-firearm). He was sentenced to 30 to 60 years' imprisonment for the murder conviction and two years' imprisonment for the felony-firearm conviction. As a result of his new convictions, plaintiff's parole was revoked. Michigan law mandates consecutive sentencing for parolees who are convicted of new felonies while on parole and requires them to serve the remainder of their previous sentence before serving the sentences received for the new convictions.[1] Accordingly, plaintiff served the remainder of his sentences for the 1987

_____

[1] See MCL 768.7a ("If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense,

convictions from October 13, 1992 to February 8, 1997, and began serving his sentences for the 1992 convictions on February 9, 1997.

In 2017, new evidence revealed that plaintiff did not commit the second-degree murder and felony-firearm offenses underlying his 1992 convictions. His 1992 convictions and sentences were vacated, the prosecution dismissed the charges related to that crime, and he was released from prison on May 26, 2017. Plaintiff then filed the instant action under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq*. The parties stipulated that plaintiff was entitled to compensation totaling $1,014,657.53 for the time he was wrongfully imprisoned for the 1992 convictions, but they disputed whether he was entitled to compensation for the time he served on the remainder of his sentences for the 1987 convictions, which would result in an additional $216,438.36. In a split, published decision, the Court of Appeals held that plaintiff was not entitled to the additional compensation because (1) he was seeking compensation for time served under a consecutive sentence for other convictions, which is precluded under MCL 691.1755(4),[2] and (2) he failed to satisfy the WICA's threshold requirements for compensation with respect to his 1987 convictions, which were never reversed or vacated and remained valid.[3]

_____

the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.").

[2] See MCL 691.1755(4) ("Compensation may not be awarded under subsection (2) for any time during which the plaintiff was imprisoned under a concurrent or consecutive sentence for another conviction.").

[3] *Ricks v Michigan*, 330 Mich App 277, 288-289; 948 NW2d 83 (2019).

In dissent, Judge JANSEN opined that the WICA "does not mandate a setoff" for the time plaintiff was incarcerated on a parole violation caused by a wrongful conviction.[4]

A review of the clear, unambiguous language of the WICA demonstrates that the Court of Appeals reached the correct result: plaintiff is not entitled to additional compensation for the time he was imprisoned under his valid 1987 convictions. The WICA provides compensation only for the wrongful conviction(s) and imprisonment that form the basis of the plaintiff's WICA claim. That is, the WICA only compensates individuals for the time they were *wrongfully imprisoned for the crimes they did not commit*—not time served under a consecutive sentence for another, valid conviction. The majority opinion maneuvers around this straightforward reading of the WICA by reviewing its provisions in isolation. It then compounds its erroneous construction of the WICA with a misapprehension of the basic principles of consecutive and concurrent sentencing. Finally, the majority opinion misapplies this Court's jurisprudence and relies on public-policy considerations to award plaintiff compensation that is beyond what the Legislature expressly provided when waiving this state's sovereign immunity in the WICA. I dissent from that decision and would affirm the result reached by the Court of Appeals.

## I. STANDARD OF REVIEW AND APPLICABLE PRINCIPLES OF STATUTORY INTERPRETATION

Whether plaintiff is entitled to the additional compensation under the WICA for the time he was imprisoned under his valid 1987 convictions presents an issue of statutory

---

[4] *Id.* at 289-290 (JANSEN, J., dissenting).

interpretation that we review de novo.[5]  "Because our judicial role precludes imposing different policy choices than those selected by the Legislature, our obligation is, by examining the statutory language, to discern the legislative intent that may reasonably be inferred from the words expressed in the statute."[6]  "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used."[7]  Further, "[a] statutory term or phrase cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme."[8]  Ultimately, "where the statutory language is clear and unambiguous, the statute must be applied as written."[9]

## II.  ANALYSIS

As we recently recognized in *Sanford*, the WICA is a relatively new law that waives this state's sovereign immunity and creates a cause of action for certain people wrongfully imprisoned by the state of Michigan.[10]  "Before March 29, 2017, people who were

---

[5] *Sanford v Michigan*, 506 Mich 10, 14; 954 NW2d 82 (2020).

[6] *People v McIntire*, 461 Mich 147, 152; 599 NW2d 102 (1999) (quotation marks and citation omitted).

[7] *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011) (citations omitted).

[8] *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018) (quotation marks and citation omitted).

[9] *Id*. (quotation marks and citation omitted).

[10] *Sanford*, 506 Mich at 13; 2016 PA 343, title (stating that the WICA is an act "to provide compensation and other relief for individuals wrongfully imprisoned for crimes; to

4

wrongfully imprisoned by the state of Michigan had no recourse against it for compensation."[11] Yet the Legislature, as a matter of public policy, decided to waive this state's immunity and provide a "defined class of wrongfully imprisoned people a path to *limited* compensation."[12] Of course, like all statutory causes of actions stemming from an express waiver of sovereign immunity, the Legislature may place on such actions any limits or conditions it sees fit.[13] Reviewing the WICA as a whole, the Legislature has plainly limited plaintiff's entitlement to compensation to the period of February 9, 1997 to May 26, 2017—the time that plaintiff was wrongfully imprisoned for his wrongful 1992 convictions.

## A. THE WICA TIES COMPENSATION TO THE WRONGFUL CONVICTION AND IMPRISONMENT THAT FORM THE BASIS OF THE WICA CLAIM

The WICA provides compensation to individuals wrongfully imprisoned for crimes they did not commit, thus forming the basis of their WICA claims. For example, MCL 691.1753 states that "[a]n individual convicted under the law of this state and subsequently imprisoned in a state correctional facility *for 1 or more crimes that he or she did not commit* may bring an action for compensation against this state in the court of claims as allowed

---

prescribe the powers and duties of certain state and local governmental officers and agencies; and to provide remedies").

[11] *Sanford*, 506 Mich at 15.

[12] *Id*. at 17 (emphasis added).

[13] See *McCahan v Brennan*, 492 Mich 730, 736; 822 NW2d 747 (2012) ("[B]ecause the government may voluntarily subject itself to liability, it may also place conditions or limitations on the liability imposed.").

by this act."[14]  The WICA also repeatedly uses the term "charges," which the act defines as "the criminal complaint filed against the plaintiff . . . that resulted in *the conviction and imprisonment of the plaintiff that are the subject of the claim for compensation under this act*."[15]  Indeed, the time period in which an individual must bring a claim under the WICA does not begin to run until the judgment of conviction is reversed or vacated and the "charges" forming the basis of the WICA claim are dismissed or the claimant is found not guilty on retrial.[16]  A review of these provisions leads one to the straightforward conclusion that the WICA is designed to compensate individuals who were wrongfully imprisoned for crimes they did not commit and whose wrongful convictions and imprisonment form the basis of their WICA claims.  Members of the majority have recognized as much.[17]

MCL 691.1755, the section of the WICA governing compensation and a plaintiff's burden of proof, further supports this conclusion.  MCL 691.1755 states, in relevant part:

> (1) In an action under this act, the plaintiff is entitled to judgment in the plaintiff's favor if the plaintiff proves all of the following by clear and convincing evidence:

---

[14] Emphasis added.

[15] MCL 691.1752(a) (emphasis added).

[16] MCL 691.1757(1), citing MCL 691.1754(1)(b).

[17] See *Sanford*, 506 Mich at 24 (MCCORMACK, C.J., dissenting, joined by BERNSTEIN and CAVANAGH, JJ.) (stating that the plaintiff was "imprisoned" for purposes of the WICA "every day that he was confined in a juvenile detention facility *for a crime that he did not commit*") (emphasis added); *Tomasik v Michigan*, 505 Mich 956, 956 (2020) (MCCORMACK, C.J., concurring, joined by CAVANAGH, J.) ("In enacting the WICA, the Legislature intended wrongly incarcerated individuals to seek compensation *when their convictions are voided* and they are exonerated of all *charges* on the basis of new evidence.") (emphasis added).

(a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.

(b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. However, the plaintiff is not entitled to compensation under this act if the plaintiff was convicted of another criminal offense arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial.

(c) New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial.

(2) Subject to subsections (4) and (5),[18] if a court finds that a plaintiff was wrongfully convicted and imprisoned, the court shall award compensation as follows:

(a) Fifty thousand dollars for each year from the date the plaintiff was imprisoned until the date the plaintiff was released from prison, regardless of whether the plaintiff was released from imprisonment on parole or because the maximum sentence was served. For incarceration of less than a year in prison, this amount is prorated to 1/365 of $50,000.00 for every day the plaintiff was incarcerated in prison.

\* \* \*

(4) Compensation may not be awarded under subsection (2) for any time during which the plaintiff was imprisoned under a concurrent or consecutive sentence for another conviction.

While the majority devotes much of its analysis to MCL 691.1755(4), plaintiff's claim for additional compensation fails without the need to even reach that provision. As an alternative basis for its conclusion that plaintiff is not entitled to that additional

---

[18] MCL 691.1755(5) provides that "[c]ompensation may not be awarded under subsection (2) for any injuries sustained by the plaintiff while imprisoned," and is not at issue here.

compensation, the Court of Appeals held that while plaintiff has satisfied the threshold requirements for compensation under MCL 691.1755(1) with respect to his wrongful 1992 convictions, he could not do the same with respect to his 1987 convictions, which were never reversed or vacated and ultimately remained valid.[19]  This holding correctly recognizes that the WICA, as a whole, ties a plaintiff's eligibility for compensation to the specific crimes, charges, and convictions that led to the wrongful imprisonment and form the basis of the WICA claim.

In its review of the threshold-eligibility requirements in MCL 691.1755(1), the Court of Appeals aptly recognized that the Legislature repeatedly used the word "the" in front of "crimes," "charges," and "judgment of conviction" in MCL 691.1755(1)(a) to (c) in setting forth when a plaintiff is eligible for compensation under the WICA.  On the other hand, the Legislature uses the word "another" before "criminal offense" in MCL 691.1755(1)(b) and "conviction" in MCL 691.1755(4)—other subsections of MCL 691.1755 that explain when a plaintiff is *not* eligible for compensation.  We have previously defined "the" as a "definite article . . . (used, especially before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article a or an)."[20]  As an adjective, "another" is defined as "different or distinct from the one first considered"; "some other"; or "being one more in addition to one or more

---

[19] *Ricks*, 330 Mich App at 288-289.

[20] *Robinson v Lansing*, 486 Mich 1, 14; 782 NW2d 171 (2010) (quotation marks, citations, and brackets omitted).

8

of the same kind."[21] Accordingly, the Legislature's use of "the" before "crimes," "charges," and "judgment of conviction" throughout MCL 691.1755(1)(a) to (c) means those provisions refer to the specific crimes and charges leading to a plaintiff's wrongful conviction and imprisonment that gave rise to a WICA claim. The Legislature's use of "another" before "criminal offense" in MCL 691.1755(1)(b) and "conviction" in MCL 691.1755(4) means those provisions refer to some other offense or conviction that is different or distinct from the wrongful conviction and imprisonment, and which therefore does not warrant compensation under the WICA. Thus, MCL 691.1755 reflects the overall structure of the WICA in only providing compensation for the specific crimes, charges, or convictions that the plaintiff was wrongfully convicted of and imprisoned for, and which ultimately form the basis of the WICA claim—not "another" crime, charge, or conviction.

The majority opinion disagrees with this commonsense reading of the WICA and instead frames MCL 691.1755 as a two-step inquiry in which a claimant's eligibility for compensation is wholly separate from the calculation of the amount of compensation due. Specifically, the majority states that "neither MCL 691.1755(2) nor MCL 691.1755(4) contains any language suggesting that a claimant who meets the wrongful-conviction threshold-eligibility requirements of MCL 691.1755(1) must satisfy those requirements *again* for each sentence that contributed to their wrongful imprisonment[.]"[22] By separating the eligibility requirement from the compensation formula and treating the latter

---

[21] *Merriam-Webster's Collegiate Dictionary* (11th ed). See also *The American Heritage Dictionary of the English Language* (2011) (defining "another" as "1. One more; an additional. . . . 2. Distinctly different from the first. . . . 3. Some other").

[22] *Ante* at 13.

as a stand-alone inquiry, the majority severs the necessary tie between the crimes, charges, and convictions that led to the wrongful imprisonment and the compensation owed. Further, the majority's distorted framework ignores the maxim that courts must construe the statutory text as a whole, not in isolation or piecemeal.[23]  In rejecting the Court of Appeals' alternative holding that plaintiff failed to meet the WICA's threshold requirements for his 1987 convictions, the majority points to the state's concession that plaintiff is entitled to compensation for his wrongful 1992 convictions and concludes that this concession automatically entitles him to compensation for the time served under his valid 1987 convictions.  Such bootstrapping of WICA eligibility is not only precluded by MCL 691.1755, but by a complete reading of the WICA as a whole, which, as explained above, provides compensation only for the wrongful conviction and imprisonment that form the basis of the plaintiff's WICA claim.  The majority opinion recognizes as much.[24]

Further, contrary to the majority's assertion, both MCL 691.1755(2) and (4) *do* contain language demonstrating this limitation on compensation.  MCL 691.1755(2) requires the court to find that the "plaintiff was wrongfully convicted and imprisoned" before calculating the amount of compensation due.  As we explained in *Sanford*, "[t]he

---

[23] *McQueer*, 502 Mich at 286.  See also Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012, p 167) ("Perhaps no interpretative fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").

[24] See *ante* at 8 ("[T]he exception in MCL 691.1755(4) applies only when the excluded-from-compensation consecutive sentence is served for 'another conviction'—a conviction *other than the one that established the claimant's eligibility for compensation*.") (emphasis added).

10

most natural reading of MCL 691.1755(2) is that the adverb 'wrongfully' modifies both verbs immediately following it, which are separated by the conjunctive 'and.' "[25] Thus, both the conviction and the imprisonment referred to in MCL 691.1755(2) must be "wrongful." It would make little sense if a WICA claimant was only required to set forth a single wrongful conviction as a baseline for compensation, but could then lay claim to compensation that is related to *other* convictions, including convictions that were never reversed or vacated and, therefore, are not wrongful. This is precisely the reason why MCL 691.1755(4) precludes compensation for any time served under a concurrent or consecutive sentence for "another conviction."

While no one disputes that plaintiff has satisfied the threshold requirements in MCL 691.1755(1) for compensation with respect to the *wrongful* 1992 convictions, he has very clearly not done so with respect to his *valid* 1987 convictions. Therefore, plaintiff is not entitled to compensation for the time he served under his 1987 convictions.

### B. THE MAJORITY'S INTERPRETATION OF MCL 691.1755(4)'S PHRASE "A . . . CONSECUTIVE SENTENCE" IS ERRONEOUS

Even assuming plaintiff could somehow satisfy the threshold requirements for compensation under MCL 691.1755(1) for his 1987 convictions, he must still overcome the setoff provision of MCL 691.1755(4), which precludes compensation "for any time during which the plaintiff was imprisoned under a concurrent or consecutive sentence for another conviction." The majority opinion conjures up textual support for its position by introducing a novel concept to consecutive sentencing that was not raised by the parties or

---

[25] *Sanford*, 506 Mich at 20 (opinion of the Court).

11

either Court of Appeals opinion below. In concluding that MCL 691.1755(4) is inapplicable, the majority concludes that this provision bars compensation only for time served under a sentence that begins to run *after* the sentence for the wrongful conviction has been served and that because plaintiff served the remainder of his sentences for his 1987 convictions *before* his sentences for the wrongful 1992 convictions, plaintiff is not actually seeking compensation for time served under a consecutive sentence for another conviction.[26] I disagree.

The WICA does not define "consecutive sentence," and unsurprisingly, the term has acquired a peculiar and appropriate meaning within the law; therefore we must construe the phrase according to that meaning.[27] *Black's Law Dictionary* (11th ed) defines "consecutive sentences" as "[t]wo or more sentences of [incarceration] to be served in sequence."[28] At first glance, it may appear that the majority's focus on the specific order in which a sentence is served bears some relevance in defining a consecutive sentence. But again, the majority fails to read the relevant language in context with the rest of the statute. MCL 691.1755(4) precludes compensation for any time served under *a concurrent or consecutive sentence* for another conviction. Of course, sentences for multiple convictions are either served consecutively or concurrently. Unlike consecutive sentences, "concurrent

---

[26] *Ante* at 8.

[27] *Sanford*, 506 Mich at 21 n 19 (opinion of the Court) ("[A] legal term of art must be construed in accordance with its peculiar and appropriate legal meaning.") (quotation marks and citations omitted). See also MCL 8.3a.

[28] *Black's Law Dictionary* (11th ed), p 1367.

12

sentences" are "[t]wo or more sentences of [incarceration] to be served simultaneously."[29] That is, while concurrent sentences are served at the same time, consecutive sentences are served in a continuous and uninterrupted manner. Contrary to the majority's assertions, the specific order in which the sentences are served is not what defines a sentence as consecutive; instead, it is the cumulative nature of the time served that makes a sentence consecutive rather than concurrent.[30]

In this case, after finding that plaintiff had violated his parole, the trial court was required by law to order plaintiff's sentences for his wrongful 1992 convictions to run consecutively with his sentences for his 1987 convictions.[31] The fact that plaintiff's sentences for his 1987 convictions were served first does not mean they lost their status as consecutive sentences. Rather, because plaintiff's sentences for his 1987 convictions were served in a continuous and uninterrupted manner with his sentences for his 1992 convictions, plaintiff's imprisonment under his 1987 convictions was time served under a consecutive sentence.

The majority's reliance on "a" before "consecutive sentence" in MCL 691.1755(4) as referring to a singular noun does not change this result. Just as the Legislature used the definite article "the" before "crimes," "charges," and "judgment of conviction" in MCL

---

[29] *Id*.

[30] See *id*., explaining "consecutive sentences" ("For example, if a convicted criminal receives consecutive sentences of 20 years and 5 years, the total amount of jail time is 25 years. — Also termed *cumulative sentences*; *back-to-back sentences*; *accumulative sentences*.").

[31] See MCL 768.7a(2).

13

691.1755(1) to explain when a plaintiff is eligible for compensation, it also used "the" before "sentence."[32] The indefinite article "a," on the other hand, is used without specificity.[33] Accordingly, the Legislature's use of the word "a" before "concurrent or consecutive sentence" in MCL 691.1755(4) is further evidence that the statute precludes compensation for time served under a concurrent or consecutive sentence that is not the subject of the WICA claim. Further, "[e]very word importing the singular number only may extend to and embrace the plural number . . . ."[34] It is therefore reasonable to construe MCL 691.1755(4)'s phrase "a . . . consecutive sentence for another conviction" as referring to *a* consecutive sentence, *or any number* of consecutive sentences, that did not form the basis of the plaintiff's WICA claim, but were instead served consecutively with the sentence that did form the basis of the claim. Here, plaintiff's sentences for his 1987 armed-robbery and assault convictions were concurrent to one another but consecutive with his sentences for his 1992 convictions.[35] Because the additional compensation plaintiff

---

[32] See MCL 691.1755(1)(a) (stating that the plaintiff must prove that he or she "served at least part of *the* sentence") (emphasis added).

[33] *Robinson*, 486 Mich at 14.

[34] MCL 8.3b.

[35] The majority posits that "[a] single sentence that is properly characterized as 'a consecutive sentence' is one that only begins to run after the completion of another sentence." *Ante* at 7-8. This is simply not true, and plaintiff's wrongful convictions and sentences illustrate why. Plaintiff was convicted, wrongfully of course, of felony-firearm and second-degree murder in 1992 and sentenced to 30 to 60 years' imprisonment for the murder conviction and two years' imprisonment for the felony-firearm conviction. Michigan law provides that a felony-firearm sentence is "in addition to the sentence imposed" for the underlying felony and "*shall be served consecutively with and preceding* any term of imprisonment imposed" for the underlying felony. MCL 750.227b(3) (emphasis added). Thus, in the first two years of plaintiff's wrongful imprisonment

14

seeks is for time served under a "consecutive sentence for another conviction," MCL 691.1755(4) precludes relief.

## C. THE MAJORITY'S REMAINING ARGUMENTS ARE UNAVAILING

In an attempt to reconcile its result with this Court's jurisprudence, the majority appears to draw on this Court's recent decision in *Sanford* to support its conclusion. In *Sanford*, we concluded that the WICA did not provide compensation for time that the plaintiff had spent in preconviction detention because such detention is not "wrongful" for purposes of the WICA, which only compensates an innocent person for imprisonment after a conviction.[36] Without citing *Sanford*, the majority nonetheless relies on its governing principle that imprisonment must be "wrongful" to be compensable under the WICA by concluding that *all* of plaintiff's imprisonment was "wrongful" because it was all caused by his wrongful convictions.[37] That is, but for his wrongful convictions, plaintiff would not have violated his parole and therefore would not have been imprisoned for his 1987 convictions.

The majority's arguments fail for a number of reasons. First, there was no dispute that the plaintiff in *Sanford* sought compensation under the WICA for the same crimes and

---

(February 9, 1997 to May 26, 2017), he was serving his felony-firearm sentence and doing so *consecutively* with his second-degree murder sentence. Our Legislature correctly recognizes that a sentence is still consecutive even if it is served first, and no one seems to dispute that plaintiff's 1992 sentences were served consecutively because they were served in a continuous and uninterrupted manner. Yet the majority's transmogrified view of consecutive sentencing brushes past this elementary point without explanation.

[36] *Sanford*, 506 Mich at 21-22 (opinion of the Court).

[37] *Ante* at 11.

15

charges leading to his wrongful conviction and thus forming the basis of his WICA claim. The same cannot be said here. The majority fails to recognize that plaintiff is seeking compensation for time he served under his valid 1987 convictions. Put simply, there is nothing "wrongful" about plaintiff serving a period of incarceration under a valid conviction for purposes of the WICA.[38] The relevant date for application of the compensation formula under MCL 691.1755(2)(a) is February 9, 1997—the date plaintiff began to serve his wrongful term of imprisonment for his wrongful 1992 convictions. In fact, the majority opinion recognizes this when it states that plaintiff's sentences for the wrongful 1992 convictions "did not begin to run until he finished serving the 4 years and 118 days that remained for his armed-robbery and assault sentences."[39]

I agree with the majority that plaintiff's wrongful 1992 convictions were the sole cause of his parole violation that led to his reimprisonment for the 1987 convictions.[40]

---

[38] This Court has recognized that parole is merely "a permit to the prisoner to leave the prison, and not a release . . . ." *People v Idziak*, 484 Mich 549, 571; 773 NW2d 616 (2009) (quotation marks and ellipsis omitted), citing MCL 791.238(6). "While on parole, the prisoner shall be considered to be serving out the sentence imposed by the court, . . . but he remains in the legal custody and under the control of the department [of corrections]." *Idziak*, 484 Mich at 564 (quotation marks and brackets omitted), citing MCL 791.238(1) and (6). Thus, when plaintiff was on parole in 1992, he was, in essence, still serving his sentence for the 1987 convictions. After entry of his wrongful convictions in 1992, he was still serving his 1987 convictions, but doing so in prison.

[39] *Ante* at 7.

[40] As the Court of Claims noted, however, it appears that plaintiff was engaged in substantial drug-trafficking activity with the murder victim. Specifically, during plaintiff's 1992 murder trial, plaintiff admitted to accompanying the victim to the place where he was killed, leaving the scene of the murder, and not returning after police arrived because plaintiff knew he was not supposed to be involved in drug activity as a condition of his parole.

16

Nonetheless, the factual circumstances of this case do not give us license to deviate from the plain and unambiguous language of the WICA. MCL 691.1755(4) precludes compensation for "any" time served under a concurrent or consecutive sentence for another conviction. The Legislature's use of the term "any" in MCL 691.1755(4) demonstrates its intent to preclude compensation for *all* time served under a concurrent or consecutive sentence for another conviction.[41] Contrary to the majority's reading of MCL 691.1755(4), the Legislature very clearly does not condition that subsection's applicability on the *cause* of the concurrent or consecutive sentence for another conviction. This legislative choice must be honored.

---

Notably, the parole board is not even required to hold a hearing when a parole violation is based on a new felony conviction and sentence. Michigan Department of Corrections, *Parole Violation Process*, PD 06.06.100 (July 1, 2018) <https://www.michigan.gov/documents/corrections/06_06_100_626674_7.pdf> (accessed June 15, 2021) [https://perma.cc/VXZ9-SWYU] ("A parolee convicted of a felony while on parole who receives a new sentence to be served with the Department shall be found to have violated parole based on that new conviction and sentence. A parole violation hearing is not required."). Perhaps the trial court used the surest piece of evidence available at the time to conclude that plaintiff was in violation of his parole, i.e., the 1992 convictions. Defendant has argued on appeal that plaintiff's conduct would have resulted in a parole violation irrespective of the wrongful 1992 convictions. In any event, because the plain language of the WICA clearly provides no compensation for time served under a consecutive sentence for another conviction, I need not determine whether the record in this case also demonstrates that independent reasons existed to support plaintiff's parole violation.

[41] See *People v Harris*, 495 Mich 120, 131; 845 NW2d 477 (2014) (" 'Any' is defined as: **1.** one, a, an, or some; one or more without specification or identification. **2.** whatever or whichever it may be. **3.** in whatever quantity or number, great or small; some. **4.** every; all[.]") (citation omitted). See also *2 Crooked Creek, LLC v Cass Co Treasurer*, 507 Mich ___, ___; ___ NW2d ___ (2021) (Docket No. 159856); slip op at 8 ("By using the term 'any,' however, it is clear that the Legislature intended to encompass *all* types of notice required under the [General Property Tax Act, MCL 211.1 *et seq*.], not just actual notice.") (emphasis added).

17

Indeed, the Legislature, in enacting the WICA, did not intend to provide compensation for *every* wrong that resulted from the wrongful imprisonment. MCL 691.1755(5), the other setoff provision, precludes compensation for "any injuries sustained by the plaintiff while imprisoned." Of course, the individual would not have sustained those injuries but for the wrongful imprisonment. But just as application of MCL 691.1755(4) would preclude plaintiff from recovering compensation for time he may not have otherwise served but for the wrongful conviction and imprisonment, the WICA does not provide a remedy for injuries sustained while wrongfully imprisoned. As we recognized in *Sanford*, the WICA is not designed to make those who were wrongfully imprisoned whole; no amount of compensation can accomplish this. Instead, the WICA provides limited compensation to those wrongfully imprisoned for crimes they did not commit and that ultimately form the basis of their claim. Whether a given limitation is reasonable is a question for the Legislature, not this Court.

Finally, the majority's focus on the WICA's remedial purpose is unpersuasive. While the majority astutely points out that the act is not titled the "Wrongful *Conviction* Compensation Act," it fails to recognize that the act makes a wrongful conviction a necessary prerequisite to compensation for the wrongful imprisonment.[42] Here, plaintiff *is* being compensated for the time he was wrongfully imprisoned for the wrongful 1992 convictions, which is all the compensation that the WICA authorizes and requires. Further,

---

[42] See, e.g., MCL 691.1753 (allowing individuals to file an action for compensation on the basis of wrongful conviction and imprisonment); MCL 691.1755(2) (requiring the court to find that "a plaintiff was wrongfully convicted and imprisoned" before awarding compensation).

18

in finding its result harmonious with the WICA as a remedial law, the majority completely disregards the fact that the WICA is an express waiver of sovereign immunity. "It is the exclusive province of the Legislature to define when and to what extent the state of Michigan relinquishes its sovereign immunity."[43] The statutory waiver of sovereign immunity will necessarily result in arguably arbitrary line-drawing negotiated through the political process. How and why the Legislature draws the lines between those entitled to recover and those who are not are questions typically outside the purview of judicial review.[44] Ultimately, the Legislature's decision to waive this state's sovereign immunity and enact a law that compensates those wrongfully imprisoned individuals only for the time they served under their wrongful convictions was a policy choice, and "[c]ourts cannot substitute their opinions for that of the legislative body on questions of policy."[45] Yet, in granting plaintiff more relief than he is entitled to under the guise of the WICA's remedial purpose, the majority is not only derelict in its own duty to apply the WICA as written but also encroaches on the Legislature's exclusive authority to make the policy decisions of this state.

### III. CONCLUSION

In granting plaintiff relief today, the majority no doubt achieves a desirable result for WICA claimants. But in doing so, it unapologetically usurps the Legislature's role in establishing the parameters for waivers of sovereign immunity and grants WICA claimants

---

[43] *Sanford*, 506 Mich at 17 (opinion of the Court).

[44] See *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 207; 731 NW2d 41 (2007).

[45] *Cady v Detroit*, 289 Mich 499, 509; 286 NW 805 (1939).

19

more compensation than the Legislature saw fit to award them under the plain language of the WICA. I would affirm the opinion and judgment of the Court of Appeals. Because the majority reverses that judgment, I dissent.

Brian K. Zahra
David F. Viviano
Elizabeth T. Clement
